[No. 2051.   Decided June 18, 1896.]

THE STATE OF WASHINGTON, *on the Relation of Puget Sound National Bank of Seattle*, v. THE SUPERIOR COURT OF KING COUNTY AND RICHARD OSBORN, *Judge*.

ABATEMENT OF ACTION — PENDENCY OF OTHER ACTION — MANDAMUS TO COMPEL COURT TO PROCEED WITH ACTION — CREDITOR'S BILL IN FOREIGN FORUM — EFFECT ON PARTIES NOT WITHIN JURISDICTION.

The fact that a stay of proceedings of a cause in a court of this state has been granted on motion instead of answer setting up the pendency of an action in another state involving the same subject matter is not ground for reversal.

The pendency of a creditor's bill in another state which seeks to subject to the claims of creditors the proceeds of an insurance policy, upon which an assignee of the assured had instituted an action in this state, will not constitute a ground for stay of proceedings here, when the assignee has not been made a party to the action in the foreign court, even though it is averred in the pleadings therein that the assignment was invalid because of fraud.

Notice by the defendant in an action in this state to the plaintiff that the debt claimed by plaintiff is the subject of another action in a foreign state against the same defendant imposes no obligation on plaintiff to appear in the foreign court and defend the action there.

A mandamus in the nature of a *procedendo* will be awarded against a superior court to compel it to proceed with a cause in which it had ordered an indefinite stay of proceedings on the ground that an action involving the same subject matter was pending in a foreign court against the same defendant.

*Original Application for Mandamus.*

*Carr & Preston,* for relator.

*Stratton, Lewis & Gilman,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—It is conceded that the facts necessary to an understanding of this case are correctly stated in the relator's brief, and they are substantially as follows:   The firm of Davids and Company, composed of I. J. Lewis and D. S. Davids, was conducting a clothing establishment, styled "The Famous," in the city of Seattle.   These individuals had in their possession a large stock of clothing and gentlemen's furnishing goods, and on April, 28, 1894, the London, Liverpool and Globe Insurance Company, a British corporation having a statutory agent and doing business in Washington, and also in California, issued and delivered to Davids and Company a policy of insurance whereby it insured the said stock of goods against loss or damage by fire.   Other insurance companies also insured the same goods, the aggregate amount of the insurance being $49,000.

On October 1, 1894, the stock was damaged and was partially destroyed by fire.   The total loss was soon thereafter adjusted between the insured and the several insurance companies at the sum of $23,750.00.

After the adjustment of the loss, and on November 26, 1894, Davids & Company assigned their demands against the insurance companies to the relator herein, the Puget Sound National Bank, by written assignments, and on the same day the bank notified the companies of the assignment, and delivered to each a copy of the assignment of the demand against it. On January 19, 1895, one Herman Shainwald, as assignee in bankruptcy of the firm of Schoenfeld, Cohen & Co., formerly of San Francisco, and of the several members of that firm, commenced an action in equity in the district court of the United States at San Francisco, against said Davids and Lewis, and one Harris Lewis, the said insurance companies, and John Doe and Richard Roe, and obtained a temporary restraining order, enjoining the defendants, their servants, etc., from collecting or transferring or interfering with the property of "The Famous," and from paying moneys to Davids & Co. until the further order of the court.

The bill of complaint was subsequently so amended as to make the relator herein a defendant instead of the fictitious defendants above named. The complainant in that action claimed that the property insured was not the property of Davids & Co., but of Harris Lewis, against whom a judgment had been rendered in that court, and that the assignments to the relator were colorable and fraudulent, and he sought by his suit to subject the remainder of the stock of goods and the amount due from the insurance companies to the payment of his judgment. Service of the subpœna was attempted upon the relator, but upon its motion, appearing specially, was quashed. The case in the United States district court is still pending, though several interlocutory opinions have been ren-

dered therein, which are reported in 69 Fed. Rep., at pages 487, 687 and 701.

On September 17, 1895, the Puget Sound National Bank commenced an action in the superior court of King county for the recovery from the insurance company of the sum of $2,423.45, its proportionate share of the loss as adjusted, with interest from December 1, 1894, at which time the loss became payable according to the terms of the policy. A general demurrer was interposed to the complaint by the defendant, which it subsequently waived with leave to answer within ten days. Before the expiration of the time for answering, the company, without answering, filed a motion to stay the proceedings, supported by the affidavit of one of its attorneys here. By the motion the insurance company asks to have all proceedings here stayed until the final determination of the San Francisco suit, upon the ground that the United States district court had obtained jurisdiction of it, and is about to subject it there to the payment of the demand, and there is danger of its being compelled to pay the same debt twice unless the proceedings here are stayed. The affidavit, among other things, sets up the foreign incorporation of the company with its principal office in London, that it has had for a number of years, and now has, at San Francisco, a general office for its Pacific Coast business, under the management and supervision of a general manager, who is its disbursing officer for that business, having control of the funds for the payment of its Pacific Coast losses, and to whom all local agents on the Pacific Coast report and remit all premiums, and who pays all Pacific Coast losses from funds in his possession at San Francisco; that at the time of the filing of the bill in California, this manager had under

44 — 14 WASH.

his control the company's funds wherewith to pay this loss; that the insurance company had appeared in that suit, and unsuccessfully moved to set aside the restraining order, and that there is danger that the action here may be determined before that in California; "that affiant is advised and verily believes that the defendant has a good defense in the above entitled action upon the merits thereof, but said defendant does not desire to make such defense, and would be willing to pay the amount at which such loss was adjusted but for the fact of the pendency of the different proceedings against it in different jurisdictions, and pursuant to such object said defendant has through this affiant, its attorney, offered to the plaintiff herein to pay the amount of such adjustment into court in the said United States district court for the Northern District of California, there to be litigated for, provided the plaintiff would enter its appearance in said suit, but the said plaintiff has refused to do so," and that a like offer has been made by the company's San Francisco attorney to Shainwald, the plaintiff there, and refused.

On November 15, the insurance company, by its attorneys, filed in the action a written notice of the issuance of the injunction therein, and requested the bank to enter its appearance and make defense, and tendered its assistance therein. Subsequently, the bank filed the affidavit of its president, showing the *bona fides* of, and consideration for, the assignment of Davids and Co. to the bank, that the assignment was prior to the filing of the original bill in California, that the indebtedness for which the bank holds the assignments exceeds the amount due upon all the policies, and stating that the offer to pay made by the attorney for the company was not so much an offer as

a suggestion of willingness to pay, and expressly denied and excluded the accrued interest due on the demand. The insurance company filed the further affidavit of its attorney to the effect that it had employed competent attorneys and is making a *bona fide* effort to have the suit dismissed as to itself.

On November 23, the motion for a stay came on to be heard upon the complaint and the foregoing affidavits and motion, and the learned judge of the court below granted the motion and ordered the proceedings stayed here until the California suit " be determined so far as the same affects the liability of the defendant here to the plaintiff there upon the policy issued by this defendant and sued upon in this action." The bank then demanded that the court proceed with the cause, and require the issues to be made up, but the court declined to accede to the demand; whereupon the bank, by its attorneys, applied to this court for a writ of mandate compelling the court below to proceed as requested.

The primary and principal question to be determined is whether the court was justified by the facts and the law in granting a stay of proceedings at the request of the defendant, and refusing to proceed with the cause when requested to do so by the plaintiff therein, the relator here. It is contended by the relator that the insurance company was not entitled to a stay at any stage of the proceedings, and especially that no stay should have been granted before the issues to be determined were fully made up. Its position is that the facts relied upon by the defendant company for a stay should have been set up in the answer, as was done in the *Neufelder cases* (6 Wash. 336, 33 Pac. 870, and 10 Wash. 393, 39 Pac. 110); and not by way of motion supported by affidavit merely. We think

it would have been better practice, and that which is most consonant with the spirit of our statute, to have set forth in the answer all the facts relied upon by the defendant as entitling it to the relief sought.   If the pendency of another action is claimed as ground for an abatement, it would seem that it should be pleaded. Our statute, like many others, provides that if the complaint is not answered within a specified time after the service of summons, the plaintiff may take judgment against the defendant by default, or for want of an answer.   It would therefore be error for the court to refuse to grant such judgment where no answer or demurrer has been filed within the prescribed time. And, on the other hand, if the defendant by answer admit the allegations of the complaint, the plaintiff is likewise entitled to judgment, unless the defendant shows affirmatively that the plaintiff has no such right.   It would therefore seem logically to follow that where a defendant, as in this case, admits liability upon the cause of action stated in the complaint, such admission, and the facts showing that the action ought to be stayed or abated, should be set forth by way of answer.   But this rule is not universally adopted by the courts, or exclusively recognized by the text writers. On the contrary, the method pursued in this instance is recognized as proper by Mr. Wade in his valuable work on attachment (2 Wade, Attachment, § 501). That author seems to be of the opinion that it is immaterial how the facts constituting the grounds for a stay of proceedings are brought to the knowledge of the court, as the same result may be accomplished either by motion or by plea in abatement.   The practice in this regard not having been settled, we would not feel justified, under the circumstances of this case, in reversing the ruling of the trial court solely on the

ground that a stay of proceedings was brought about
by motion rather than by a formal plea.

A more important inquiry is whether the respond-
ent was entitled to a stay of proceedings at all; and
we are of the opinion that it was not.    It is conceded
here, or at least, not denied, that the respondent was
indebted to Davids & Co. upon its contract of insur-
ance, and the amount of such indebtedness is not
disputed.    It is not denied that the claim of Davids
& Co. was assigned to the relator prior to the institu-
tion of the suit in California, and it is admitted that
the relator is not a party to that suit, and cannot be
made a party except by voluntary appearance.    Its
rights, therefore, could not be in any way affected by
the judgment of the court in that suit, and that being
so, nothing could be gained by awaiting the rendition
of judgment therein.    The court there acquired no
jurisdiction over the relator, and the pendency of that
suit is no defense to the relator's action in this state.
Drake, Attachment (7th ed.), § 703a; *Williams v. In-
gersoll*, 89 N. Y. 526.

That the pendency of the suit in California consti-
tuted no ground for a stay of the action here is also
shown by the decision of the court of civil appeals
of Texas, in the case of *North British & Mercantile
Ins. Co. v. First National Bank*, 3 Tex. Civ. App. 293
(22 S. W. 992).    In that case the bank sued the insu-
rance company, as assignee of the insured, and the
company set up in its answer the pendency of garn-
ishment proceedings against it in the state of Illinois
at the suit of creditors of the insured, which garnish-
ment was subsequent to the assignment to the plain-
tiff, and asked that the suit be abated, or judgment
suspended, until the determination of that proceeding.
The trial court sustained exceptions to the plea, over-

ruled the application for a continuance, and after a hearing, rendered judgment for the plaintiff, which judgment was affirmed upon appeal.

If then, it be true as respondent contends, that the filing of the creditors' bill in California operate as an equitable garnishment, this case is a direct authority in support of the contention of the relator. The learned counsel for the respondent concede, in their brief, that if the relator is a *bona fide* assignee of the debt which it is seeking to collect, it is entitled to judgment in this action; but they insist that, because the claimant in California, has alleged that the assignment was fraudulent and colorable, and because the court there, for that reason, retained jurisdiction of the cause, the court below was right in granting the stay, and thereby preventing a double liability on the part of the respondent. The learned judge of the federal district court, before whom the equity suit is pending in California, concedes that, but for the allegation in the complaint that the assignment to relator was fraudulent, he would deem the relator an indispensable party to that action, and would decline to proceed without its presence. *Shainwald v. Davids*, 69 Fed. 700. But we are constrained to say that it seems to us that, without the presence of relator, a complete determination of the question thus presented cannot be reached by that court. Whatever may be the averments in the creditors' bill in that suit as to the invalidity of the assignment because of fraud, it still remains that the relator is the holder of the legal title to the claim against the respondent here,.and is, therefore, a necessary party to any action concerning it, and especially to an action to annul the assignment. Pomeroy, Code Remedies, § 348; *Johnson v. Rankin*, 2 Bibb, 184; *Neilson v. Churchill*, 5 Dana, 341; *Alexander*

*v. Horner,* 1 McCrary, 634.    See, also, *Seixas v. King,* 39 La. An. 510 (2 South. 416); *Rasmussen v. McKnight,* 3 Utah, 315 (3 Pac. 83); *Gray v. Schenck,* 4 N. Y. 460; *Mallow v. Hinde,* 12 Wheat. 194.

It is a general rule in equity that all persons interested in the subject of the action should be made parties in order that their rights may be justly and finally determined, and the court should not only direct the necessary parties to be brought before it, but should refuse to proceed to a final determination of the controversy until they are in fact brought in. *Mahr v. Norwich Union Ins. Co.,* 127 N. Y. 452 (28 N. E. 391); *Osterhoudt v. Supervisors,* 98 N. Y. 244.

If the respondent, as it claims, stands in the position of a garnishee in the California suit, and has made known to the plaintiff therein that the money in the hands of the insurance company is claimed by the bank, it is the duty of the plaintiff in that suit to make the bank a party, unless it voluntarily appears; and if it fails, or is unable, to do so, there can be no decree rendered which will be binding as to the validity of such claim, and the company ought to be discharged as garnishee. *Look v. Brackett,* 74 Me. 347; *Jordan v. Harmon,* 73 Me. 261; *Burnell v. Weld,* 59 Me. 423; *Wilson v. Davidson,* 5 Munf. 178.

The respondent claims, however, that the judgment of the district court will be binding upon the relator here, notwithstanding the want of service upon it, by reason of the fact that it was notified of the pendency of the suit, and requested to defend it, and thereby, in effect, became a party thereto.    This contention is based upon the proposition that if the person sued gives due notice of the pendency of the suit to one who is responsible over, either by operation of law or by contract, and requests him to assume the defense,

the latter will be concluded by the judgment rendered, if sued upon his obligation by the former. And it is argued that if the relator should receive the amount claimed from the respondent under a fraudulent representation, that it is the rightful owner of the claim, the company could recover back the sum so paid in an action of assumpsit, and that, therefore, a judgment adverse to the company in the suit in California would be a bar to the action pending here. We are of the opinion, however, that the principle invoked is not applicable to this case. The relator is under no more obligation to defend that suit by reason of the notice than it would be if the subpœna had been served upon it in this state, and it is not claimed that such a service would be of any efficacy whatever. The relator will be obliged to show its right to the debt claimed in its action at law here before it can recover, but it is not required to go into another jurisdiction, and there disprove or defend against the claim of another person to the same debt. If the court in California is properly put in possession of all the facts as to the case here, we do not presume that it will finally enter a decree requiring the insurance company to refrain from doing that which it may be compelled to do by the court here in this action, for, as was said by the court of appeals of New York in *Mahr v. Ins. Co.*, *supra*, such a decree would be unreasonable and hence inequitable. It was also said in that case, that

"A court of equity should not restrain a party from doing an act, when it has no power to protect that party from being compelled by another court of competent jurisdiction to do the act thus prohibited."

In the case last cited, and that of *Kelly v. Ins. Co.*, 82 Iowa, 137 (47 N. W. 486), decided by the supreme court of Iowa, the facts were quite similar to the facts

in this case.   The New York suit was instituted to establish the equitable title of the plaintiffs to an insurance policy, and to prevent the company from paying the claim thereunder to any person except the plaintiffs.   Kelly, who resided in Iowa, was assignee of the policy, and was made a nominal defendant in the action in New York, and was served with a summons in the State of Iowa, but did not appear in the action. The supreme court of New York decreed that the right of the plaintiffs to the proceeds of the policy was superior to that of Kelly, and directed judgment restraining the insurance company from paying any money under the policy either to him or his assignors. This judgment was pleaded as a defense to the action on the policy by Kelly in Iowa, but the court there held that it was void as to him, and refused to permit it to be introduced in evidence.   Subsequently, the court of appeals of New York reversed the judgment of the supreme court of that state on the ground that Kelly was a necessary party to the action, and the court, never having acquired jurisdiction over him, had no authority to determine the priority of the respective claims, or to render the judgment it did render against the insurance company.   The questions here involved are so thoroughly discussed in those cases that a further citation of authorities is unnecessary.   It is suggested by respondent that the question now before this court was determined in accordance with its contention in the *Neufelder cases* above mentioned, but an examination of those cases will disclose the fact that in each of them the debt due from the insurance companies to Knox was attached in California in pursuance of a statute of that state similar to our own statute, prior to the general assignment of Knox, in this state, for the benefit of his

creditors.   In this instance, as we have seen, the assignment was made to the relator, before the equitable lien claimed by the California plaintiff was in existence.   Assuming that the assignment is valid, the respondents did not owe Davids & Company anything at the time of the filing of the creditors' bill, and therefore, there was nothing to which the alleged equitable garnishment could attach.   The relator in our opinion, being clearly entitled to a trial of its action in the superior court without abatement on account of the suit in California, the next question to be determined is whether it has invoked the proper remedy.

Respondent insists that to grant the writ prayed for would be in effect to control the discretion of the trial court, and to compel it to decide a question submitted to it in a particular way, and that the court's discretion cannot be thus controlled by mandamus.   But it is a sufficient answer to this proposition to observe that the court did not possess discretionary authority to stay the proceedings indefinitely for the cause shown, and in such cases, there being no remedy by appeal, the appellate court will award a mandamus in the nature of a *procedendo* to compel the trial court to proceed with the cause.   23 Am. & Eng. Enc. Law, 530; *Avery v. Superior Court,* 57 Cal. 247; *Dunphy v. Belden,* 57 Cal. 427; *Culver v. Judge,* 57 Mich. 25 (23 N. W. 471); *Budd v. Railroad Co.,* 14 N. J. Law, 468; *Livingston v. Dorgenois,* 7 Cranch, 577; *State, ex rel. Smith, v. Parker,* 12 Wash. 685 (42 Pac. 113); *State, ex rel. Shannon, v. Hunter,* 3 Wash. 92 (27 Pac. 1076).   Nor do we think that the case of *State v. Superior Court,* 13 Wash. 514 (43 Pac. 636), decided by this court, announces a contrary doctrine.

The motion of the relator must be granted, and a

peremptory writ of mandate issued commanding the superior court to proceed with the cause according to law.

SCOTT and GORDON, JJ., concur.

HOYT, C. J., concurs in the result.

DUNBAR, J., dissents.