[No. 6169. Decided June 26, 1906.]

THE STATE OF WASHINGTON, *on the Relation of Matteo Romano, Plaintiff,* v. JOHN B. YAKEY, JUDGE, *Defendant.*[1]

MANDAMUS—TO COMPEL MAGISTRATE'S ACTION ON CRIMINAL COMPLAINT—PARTIES—INTEREST. Under Bal. Code, § 6695, permitting any person to make complaint to a committing magistrate, a private citizen making such a complaint has sufficient interest to prosecute an action of mandamus to compel the magistrate to act.

CRIMINAL LAW—PRELIMINARY COMPLAINT—DUTY OF MAGISTRATE TO ACT—PREVIOUS ACTION BY PROSECUTING ATTORNEY. A justice of the peace, sitting as a committing magistrate is, under Bal. Code, §6695, charged with the duty to act upon complaints and determine whether a crime has been committed, and if so, to issue a warrant, and he has no power to dismiss a complaint on the ground that it is the business of the prosecuting attorney to investigate the matter and determine whether an information shall be filed.

COURTS—JUDGES—POWERS. The constitution and laws of this state recognize the distinction between the superior courts and the judges thereof.

SAME—MANDAMUS TO VISITING JUDGE. One who applies to a visiting judge, as such, and not to the superior court, for a warrant of arrest, cannot, after such visiting judge has wrongfully refused to act upon the application, and left said county, obtain a writ of mandate against him, as visiting judge of such county, compelling him to leave his duties in his own county and return for the purpose of hearing the application.

1Reported in 85 Pac. 990.

MANDAMUS—RETURN—FACTS NOT STATED.  Upon an application for a writ of mandamus, the supreme court cannot consider facts stated in respondent's brief that do not appear in the return to the writ.

MANDAMUS—WHEN LIES—REFUSAL OF MAGISTRATE TO ACT.  While the discretion or judgment of a committing magistrate upon a criminal complaint cannot be controlled, mandamus lies to compel him to act where he dismisses the proceeding without hearing or determining the same.

Application filed in the supreme court April 7, 1906, for a writ of mandamus to the Honorable John B. Yakey, judge of the superior court for Kitsap county, to compel a hearing on an application for a warrant of arrest in King county. Denied.

*William C. Keith* (*F. R. Conway,* of counsel), for plaintiff.

*Kenneth Mackintosh* (*George F. Vanderveer,* of counsel), for defendant.

RUDKIN, J.—This is an original application for a writ of mandamus. The following facts are alleged in support of the petition: that on the 26th day of October, 1904, the relator was tried in the superior court of King county for the crime of assault with intent to murder, was found guilty as charged, and sentenced to imprisonment in the penitentiary at hard labor for the term of fourteen years, and that the judgment of conviction has been affirmed by this court; that the relator was convicted of said charge solely upon the testimony of Mrs. Sebastian Ucci and Conchetta Rosetta, who testified on the trial thereof that the relator had admitted and confessed to them that he shot and cut Sebastian Ucci, the prosecuting witness named in the information upon which said conviction was had; that after the affirmance by this court of the judgment against him, the relator applied to the prosecuting attorney of King county for a criminal complaint, charging the said Mrs. Sebastian Ucci and Conchetta Rosetta with the crime of perjury, and produced before said

prosecuting attorney witnesses to the number of fifteen, who detailed to said officer the various conversations had with said Ucci and Rosetta relative to their testimony given on the trial of the relator on said charge, in which conversations said Ucci and Rosetta admitted that they had testified falsely in the matters herein set forth, and that said prosecuting attorney refused to issue said complaint, or to permit one to be issued; that thereafter the relator presented a written complaint, charging said Ucci and Rosetta with the crime of perjury, to P. V. Davis, one of the justices of the peace of said King county, and produced before said justice a large number of witnesses who signified their willingness to testify that said Ucci and Rosetta had told them that they had testified falsely on the trial of the relator in the matters complained of, and that said justice of the peace refused to issue such warrant, stating that he would not interfere with the action of the prosecuting attorney in refusing the same; that thereafter the relator applied to various other justices of the peace of said county for such warrant of arrest, and that said several justices refused to issue the same for the same reason as did the said Justice Davis; that thereafter the relator applied to the superior court of King county for a writ of mandamus against the said Davis to compel him to issue said complaint and warrant, but a demurrer to his application was sustained by the court upon the ground that said justice had a right to refuse the same; that thereafter and on the 4th day of March, 1906, the relator applied "to the honorable John B. Yakey, sitting as one of the judges of the superior court of the State of Washington for King county, and in his capacity as a committing magistrate," for a similar complaint and warrant, and by stipulation with the prosecuting attorney, submitted a large number of affidavits of witnesses theretofore taken in relation to the admissions and confessions of the said Ucci and Rosetta, and that said judge refused to issue said warrant, giving as his reason therefor

that he was at one time a prosecuting attorney himself, and that he believed it was the duty of the prosecuting attorney to make such investigations, and that he, sitting as a committing magistrate, would not interfere with the duties or doings of that officer.

The relator further avers that he is innocent of the crime of which he stands convicted; that he is ready and willing to produce at the trial of said Ucci and Rosetta, on the charge of perjury, a large number of witnesses who will testify to the admissions and confessions above set forth, and that he has no plain, speedy or adequate remedy at law. The application for the writ was made upon notice, and the prosecuting attorney of King county appeared in opposition thereto. A demurrer was interposed to the petition on the following grounds: (1) That the relator herein is not "beneficially interested;" (2) that the petition does not state facts sufficient to justify the court in granting the relief prayed for; and (3) that the court is without jurisdiction to grant the relief prayed for. The writ issued as prayed, but no further return has been made. The sufficiency of the petition is, therefore, the only question before us for consideration.

The first objection is that the relator is not a party beneficially interested. Of course, the fact that he was convicted on the testimony of these witnesses gives him no special interest in this proceeding. There is, no doubt, a conflict of authority as to whether a private party can be the relator in an application for a writ of mandamus concerning a public right or duty. In discussing this question in *State ex rel. Piper v. Gracey,* 11 Nev. 223, the court said:

"Upon this proposition there is an irreconcilable conflict in the decisions of the courts of the different states. In Maine, Massachusetts, Pennsylvania, Michigan, and California, they fully support the position of respondents, and hold that to entitle a private citizen to move for and prosecute the writ, he must show that he has some private or special interest to be subserved, or some particular right to be pursued or protected, independent of that which he holds in common with

the public at large, and that 'it is for the public officers to apply when public rights alone are to be subserved.' (*Sanger v. County Commissioners of Kennebeck*, 25 Me. 291; *Heffner v. Commonwealth*, 28 Pa. 108; *Wellington's Petitioners*, 16 Pick. 87; *People v. Regents of University*, 4 Mich. 98; 45 Cal. 607.) But we think the better and more reasonable rule is established by the decisions of the courts of New York, Ohio, Indiana, Illinois, and Iowa, which hold the opposite doctrine, and maintain that when the question is one of public right, and the object of the mandamus to procure the enforcement of a public duty, the relator is not required to show that he has any legal or special interest in the result, it being sufficient if he shows that he is interested, as a citizen, in having the laws executed and the right enforced. (*People v. Collins*, 19 Wend. 56; *People v. Halsey*, 37 N. Y. 344; *State ex rel. Huston et al. v. Commissioners of Perry County*, 5 Ohio 497; *The County of Pike v. The State*, 11 Ill. 202; *City of Ottawa v. The People*, 48 Id. 233; *Hall ex rel. v. People*, 52 Id. 307; *Hamilton v. The State*, 3 Ind. 452; *State v. County Judge of Marshall County*, 7 Iowa 186.)"

Section 6695, Bal. Code (P. C., § 3114), permits any person to make complaint that a criminal offense has been committed, and if the magistrate to whom the complaint is made wrongfully refuses to act in the matter, we think the party applying for the warrant has a sufficient interest in the performance of the public duty to compel action by mandamus. This is especially true where it is made to appear that the prosecuting attorney is resisting the application.

The second objection is that it does not appear from the petition that the respondent refused to hear or give proper consideration to the evidence presented. The duty of every magistrate to whom complaint is made is plain and specific:

"He shall examine on oath the complainant, and any witness provided by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant; and if it shall appear that any offense has been committed of which the superior court has exclusive jurisdiction, the magistrate shall issue a warrant reciting the sub-

stance of the accusation," etc. Bal. Code, § 6695 (P. C., § 3114).

It is the duty of every magistrate to see that false charges are not perferred against the innocent, and that criminal process is not resorted to, to subserve personal or private ends, but it is equally his duty to see that the guilty are brought to judgment. He may consult and advise with the prosecuting attorney, and it is proper that he should do so, especially where questions of law are involved, but, in the end, he must determine for himself whether an offense has been committed of which the superior court has exclusive jurisdiction, and, if he so finds, he must issue his warrant, whether the prosecuting attorney assents or dissents.

The magistrates of the state are conservators of the peace, in fact as well as in name, and, in the discharge of their duties, they are under the direction and supervision of no other officer. Their orders may be reviewed on habeas corpus, [Bal. Code, § 5827 (P. C. §1377)], or upon the statement filed by the prosecuting attorney containing his reasons in fact or in law for not filing an information, [Bal. Code, § 6835 (P. C. § 2082)], but not otherwise. In this state where grand juries are the exception and not the rule, it is of the highest importance that every charge of violation of the criminal laws of the state should be carefully, conscientiously, and fearlessly investigated by the officers charged with that duty, and the theory that the prosecuting attorneys of the several counties must determine first and finally who shall be prosecuted, and who shall not, finds no support in the law. In the light of what we have said, did the magistrate to whom the application in question was made perform or attempt to perform the duties enjoined upon him by law? Manifestly he did not. He simply determined that it was the duty of the prosecuting attorney to make the investigation, and that he would not interfere with the duties or doings of that officer. The respondent's brief states that he took the matter under ad-

visement and determined the application on its merits, and
in disposing of the question, said many things and gave many
reasons which do not appear in the application before us.
These facts, if true, should appear in the return to the writ
and not in argument. This court must accept the record as
it finds it, and all defenses to the application must be inter-
posed at the same time.

The sixth objection is that this court cannot control the
exercise of discretion through a writ of mandamus. This is
no doubt true. Whether a warrant should issue or not is a
question this court will not determine, nor can we control the
judgment or discretion of the officer to whom the application
was made. But we can and will compel official action in a
proper case, and if there were no other obstacle in the way,
we would unhesitatingly issue the writ commanding the magis-
trate to hear and determine the application presented to him
on the merits, instead of casting the burden on other shoulders.

The third, fourth, and fifth objections may be considered
together. They are, (3) that this court has no original juris-
diction to issue writs of mandamus to administrative officers,
unless they are state officers; (4) that the respondent as a
visiting judge had no authority to issue criminal complaints
or warrants in King county; and (5) that if he had such
authority, having ceased to be a visiting judge, his authority
has likewise ceased. In determining this question we must
first determine to whom the application for the warrant was
made, as the petition avers that it was made to the respond-
ent, while presiding in the superior court of King county, in
his capacity as committing magistrate. The application
might doubtless have been made direct to the superior court
of King county, for every court of criminal jurisdiction is
a conservator of the peace. As said by Chief Justice Marshall,
in *United States v. Burr*, Fed. Cas. No. 14,692b,

"It is believed to be a correct position, that the power to
commit for offenses of which it has cognizance is exercised
by every court of criminal jurisdiction, and that courts as

well as individual magistrates, are conservators of the peace. Were it otherwise, the consequence would only be that it would become the duty of the judge to descend from the bench, and, in his character as an individual magistrate, to do that which the court is asked to do. If the court possesses the power, it is certainly its duty to hear the motion which has been made on the part of the United States; for, in cases of the character of that under consideration, its duty and its power are co-extensive with each other."

See, also, *In re Smith,* 4 Colo. 532.

In jurisdictions where there are fixed terms of court, and where the courts are powerless to act out of term time, it is necessary to maintain the distinction between the powers of the court and the powers of the judge; but with us, where the superior courts are always in session, there seems to be no good reason for any such distinction. It would perhaps avoid confusion if every judicial act of a superior judge were declared to be the act of the court itself. But however this may be, the distinction is clearly recognized in the constitution and laws of this state, and this court is not at liberty to disregard it. Thus, section 6 of art. 4 of the constitution declares that the superior courts and their judges shall have authority to issue certain writs; and section 23 of the same article provides that court commissioners shall have the same authority as judges of superior courts at chambers. Section 5 of the act of February 26, 1891 (Laws 1891, p. 91), provides that a judge may exercise out of court all the powers expressly conferred upon a judge as contradistinguished from a court and not otherwise. Bal. Code, § 6500, allows appeals from certain determinations by the superior court or a judge thereof, and numerous other instances might be cited. Section 6695, *supra,* under which the application for the warrant in this case was made, provides that complaint may be made to a justice of the peace or judge of the superior court. Had this application been made to the superior court of King county we would find no obstacle in the way of running a writ against that court, but we are constrained to hold that

the relator elected to apply to the respondent as judge and not to the court, and that if a writ should issue, it must issue against the respondent as judge, and not against the superior court of King county.

The power of a superior judge to act as a mere magistrate outside the county for which he is elected may be doubted, and there is a still graver doubt as to his duty to do so. The original jurisdiction of this court to issue a writ of mandamus against a magistrate, even though that magistrate should be a judge of the superior court, may also be questioned, but these questions we do not determine. We are satisfied that a writ which would require the respondent to leave his duties in Kitsap county and repair to another county, for the sole purpose of hearing an application for a warrant of arrest in that county, should not issue out of this court, as long as there are in the latter county numerous officers upon whom that duty is enjoined by law.

For this reason the application is denied.

MOUNT, C. J., FULLERTON, HADLEY, CROW, and ROOT, JJ., concur.